PETERSON, Judge.
This appeal involves the competing interests protected in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (establishing the right of an accused to conduct his own defense), and Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (justifying some relaxation of the confrontation clause of the United States Constitution based on the state’s interest in protecting victims of child abuse from the trauma of testifying).
Lewine was charged with committing a lewd act or assault in the presence of a child in violation of section 800.04, Florida Statutes (1991). Pursuant to Faretta, the court allowed Lewine to conduct his own defense and appointed standby counsel at Lewine’s request for co-counsel. Pursuant to section 92.54, Florida Statutes (1991), the victim testified via closed circuit television. The trial court held that there was a great possibility of severe trauma to the child if she were to hear Lewine’s voice and denied him the right to conduct personally the cross-examination of his daughter. The trial court informed Lewine that he could exercise the right of cross-examination by telling his standby counsel what questions to ask the child. Lewine objected to this procedure, asserting his desire to conduct his own cross-examination. Following the victim’s direct examination, Lewine’s standby counsel stated that, in view of the trial court’s ruling, no cross-examination would take place. Lewine contends that the procedure adopted by the trial court violated his right to conduct his own defense as recognized in Faretta.
Lewine does not contend that his right to confront witnesses was abridged by the trial court’s procedure — the issue brought by the defendant in Craig — but Craig is relevant to the instant case because Craig recognized the interest of the state in protecting a child-victim witness. In section 92.54, Florida Statutes (1991), among others, Florida has expressed such an interest. The purpose of the statute is to prevent the emotional or mental harm to the child that could be caused by testifying in the formality of a courtroom occupied by the alleged perpetrator of the crime. The statute establishes the procedures to be followed when the child testifies via closed circuit television. The statute does not provide for the unusual circumstance in which a defendant conducts his own defense, but the legislature did recognize that the child could be harmed by seeing or hearing the alleged perpetrator. Subsection (4) of the statute permits the defendant to observe and hear the testimony of the child but requires the court to ensure that the child cannot see or hear the defendant.
In Craig, the United States Supreme Court held that, so long as a trial court makes a case-specific finding of necessity, the confrontation clause does not prohibit a state from using a one-way closed circuit television procedure for the receipt of testi *336 mony by a child witness in a child abuse case.[1] In so holding the Court recognized the State of Maryland’s “traditional and transcendent interest in protecting the welfare of children_” Id., 497 U.S. 836, 110 S.Ct. 3157. It refused to second-guess the Maryland legislature’s considered judgment regarding the importance of its interest in protecting child abuse victims from the emotional trauma of testifying. Id., 497 U.S. at 855, 110 S.Ct. at 3168. The Maryland statute considered by the Court included a provision that “[ojnly the prosecuting attorney, the attorney for the defendant, and the judge may question the child.” Id., 497 U.S. at 840 n. 1, 110 S.Ct. at 3161 n. 1, quoting Md.Cts. & Jud.Proc. Code Ann. § 9-102(a)(2) (1989). While the Court did not discuss that specific provision, it recognized the state’s interest as sufficiently important to justify the use of a special procedure that omits a face-to-face confrontation with a defendant. Id., 497 U.S. at 840 n. 1, 110 S.Ct. at 3161 n. 1. Like Maryland, Florida has considered the issue, and we will follow the lead of the United States Supreme Court and not second-guess the legislature’s considered judgment regarding the importance of protecting its children.
In Faretta, the Court held that a defendant has a constitutional right to conduct his own defense. However, Faretta is not an absolute bar to standby counsel’s unsolicited participation. McKaskle v. Wiggins, 465 U.S. 168, 176, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984).
A defendant’s right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.
Id., 465 U.S. at 174, 104 S.Ct. at 949. “In determining whether a defendant’s Faretta rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his ease in his own way.” Id., 465 U.S. at 177, 104 S.Ct. at 950.
In the instant case, the record shows that Lewine was afforded the rights described in Wiggins and that he had a fair chance to present his case in his own way. Lewine argued motions and evidentiary issues, gave opening and closing statements, conducted all cross-examination of state witnesses, conducted voir dire, and made at least one strategy decision regarding jury instructions. Standby counsel did none of the above. Lewine also conducted direct examination of all of the defense witnesses except the direct examination of himself. Lewine’s direct testimony was taken by standby counsel who, prior to taking the testimony, announced to the jury with Lew-ine’s acquiescence: “Ladies and Gentlemen, what’s going to happen now is I’m going to ask Mr. Lewine questions to assist him in getting his version of these events to you. I’m not acting as his lawyer, but just to facilitate and make it easier for everything to occur.”
We think the trial court fashioned a reasonable solution to the problem posed by the juxtaposition of Faretta and Craig and the lack of specific statutory direction. The only restriction on Lewine was that he was not allowed to question the child directly but was required to state his questions to standby counsel who in turn could voice the questions to the child. The questions were not to be subject to screening by standby counsel or by the court except for the usual application of the rules of evidence. We think this procedure protected Lewine’s Sixth Amendment rights and protected the state’s interest in preventing harm to the child.
Lewine also objects to the assessment of twenty points for victim injury. He contends that the state failed to show that physical injury resulted from the sexual *337 assault, but our review of the record reflects that testimony offered by the state supports the trial court’s assessment of victim injury points.
The judgment and sentence are affirmed.
AFFIRMED.
DAUKSCH and DIAMANTES, JJ„ concur.

. In the instant case, there is no issue regarding the propriety of the trial court’s determination that the child would suffer harm if she saw or heard Lewine during her testimony. A transcript of the hearing on that issue was not made a part of the record, and Lewine made no attack on that determination.